**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS | ) | |
| COMPANY, L.P., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-CV-464 |
| | ) | |
| AMHERST TELEPHONE | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY BRIEF OF RURAL LEC DEFENDANTS IN SUPPORT OF MOTION TO DISMISS

The Rural LEC Defendants[1] by their attorneys, Axley Brynelson, LLP, by Michael J. Modl and Judd A. Genda, hereby submit this Reply Brief in support of their Motion to Dismiss with prejudice Counts I through IV and X of Plaintiff's Complaint for Failure to State a Claim.

## INTRODUCTION

Sprint's Brief in Response to the Rural LEC Defendants' Motion to Dismiss ("Sprint Response"), like its Complaint, misconstrues federal law, in particular the intraMTA rule, and as such Sprint has failed to state a claim upon which relief may be granted. Although the intraMTA rule has existed for almost two decades, Sprint is now attempting to reinterpret the rule in an effort to justify its demands for refunds of access charge payments it voluntarily has made for years. At issue in this case is the compensation arrangement between the Rural LEC Defendants

---

[1] Amherst Telephone Company, Chequamegon Communications Cooperative, Inc., Chibardun Telephone Cooperative, Inc., Hager Telecom, Inc. d/b/a BEVCOMM, Indianhead Telephone Company d/b/a BEVCOMM, LaValle Telephone Cooperative, Nelson Communications Cooperative, Richland-Grant Telephone Cooperative, Inc., Tri-County Communications Cooperative, Inc., Union Telephone Company, Vernon Telephone Cooperative, West Wisconsin Telcom Cooperative, Inc., and Wood County Telephone Company d/b/a Solarus

(local exchange carriers ("LECs")) and Sprint (an interexchange carrier ("IXC")[2].  Yet, the Sprint Response is concentrated on the intraMTA rule and the compensation arrangements between LECs and commercial mobile radio service ("CMRS") carriers.  Sprint is *not* a CMRS carrier[3] and its Complaint does *not* involve compensation arrangements between LECs and CMRS carriers.  Because Sprint's interpretation of the intraMTA rule is wrong, Sprint has failed to allege facts sufficient to state a claim upon which relief may be granted.  Accordingly, Counts I through IV and X should be dismissed with prejudice.

## THE INTRAMTA RULE

The intraMTA rule is designed to prevent LECs from assessing switched access charges on CMRS carriers for "local" traffic (defined in this context as calls between two end points within a single Major Trading Area or "MTA") that CMRS carriers exchange with LECs. The FCC adopted the rule in 1996, in the *Local Competition Order*, holding that such "local" intraMTA traffic is not subject to access charges but rather is subject to reciprocal compensation arrangements under Section 251(b)(5) of the Telecommunications Act - "unless it is carried by an IXC."[4]  Pursuant to the intraMTA rule, a CMRS carrier may establish an interconnection agreement ("ICA") or comparable arrangement with a LEC to exchange intraMTA calls over local trunks under the reciprocal compensation rate regime, and, indeed, that often is how such traffic is exchanged.  However, where an intraMTA call is routed via an IXC outside the

---

[2] *Complaint* at ¶ 3.
[3] Sprint Communications Company L.P.—the plaintiff in this action—is a different entity from Sprint Spectrum L.P., a wireless carrier.
[4] *See Implementation of the Local Competition Provisions in the Telecommunications Act of 1996 and Interconnection between Local Exchange Carriers and Commercial Mobile Radio Service Providers, First Report and Order,* 11 FCC Rcd. 15499, at ¶ 1043 (1996) ("Local Competition Order")*; see also TSR Wireless, LLC v. U.S. West Communications, Inc.,* 15 FCC Rcd. 11166, at ¶ 31 (2000) (reiterating that intraMTA traffic is subject to "access charge rules if carried by an interexchange carrier") ("TSR Wireless Order").

provisions of a LEC-CMRS ICA, and instead is terminated (or originated) using a LEC's tariffed switched access services, access charges do apply as between the LEC and the IXC.[5]

The telecommunications industry has designed its billing practices accordingly, such that any traffic (including any intraMTA traffic) that an IXC routes via tariffed switched access facilities has been subject to access charges as between the LEC and the IXC. For 18 years following the promulgation of the intraMTA rule, IXCs paid such tariffed charges without dispute. The Commission has done nothing to upset these billing practices.

In its *Connect America Order*, the FCC resolved certain disputes that had arisen in applying the intraMTA rule.  However, that order did not purport to alter the scope of the rule or to upset the industry's longstanding understanding of the rule's inapplicability to LEC-IXC billing practices concerning traffic routed via tariffed access facilities.  In the *Connect America Order*, the FCC clarified that a LEC may not bill a CMRS carrier access charges if an intraMTA call is routed through an IXC.[6]  But nowhere did the FCC say that the LEC may not impose tariffed access charges on the IXC for those calls where the IXC routes the traffic over tariffed access services.

Notably, the FCC declined to order LECs to amend their switched access tariffs to create any exemption from access charges for any intraMTA traffic that a CMRS carrier might choose to route via an IXC using switched access services. That decision to leave LECs' tariffs intact contrasts starkly with other portions of the *Connect America Order* that did require tariff amendments-most notably, to effectuate rate reductions mandated by the FCC.[7]

---

[5] *Id.*
[6] *Connect America Order*, at ¶ 1007 n.2132.
[7] *See Id.*, at ¶ 813 (discussing required revisions to access tariffs); *see also Id., at* ¶ 961 (discussing requirements for tariffing of charges for VoIP-PSTN traffic).

Nevertheless, Sprint has misconstrued the FCC's guidance and is unjustifiably attempting to avoid paying switched access charges in connection with alleged intraMTA traffic that it exchanges with LECs over long-distance access trunks.  Sprint not only paid access charges for years in connection with this alleged intraMTA traffic without objection, but also presumably recovered the costs associated with those payments from their own retail and wholesale customers (through long-distance or other charges). Nevertheless, Sprint now acts as if it suddenly has discovered the two-decade old intraMTA rule and is seeking to use it not only to avoid paying access charges on a going-forward basis, but to claim entitlement to retroactive refunds for access charges already paid over many years.

## ARGUMENT

In support of its refund claim, Sprint relies on two FCC orders[8] and a handful of cases from other jurisdictions.  In its Memorandum of Law in Support of Rural LEC Defendants' Motion to Dismiss ("Defendant Memorandum"), the Rural LEC Defendants addressed the flaws with Sprint's reliance on the FCC Orders.  In this brief, the Rural LEC Defendants provide further support for their arguments with respect to the FCC Orders and address the flaws with Sprint's reliance on those intraMTA cases cited in the Sprint Response.

## I.   THE PORTIONS OF FCC ORDERS AND CASES UPON WHICH SPRINT RELIES DO NOT SUPPORT SPRINT'S REFUND CLAIM.

Sprint's interpretation of the FCC Orders and case law regarding intraMTA calls is wrong.  The U.S. District Court for the Northern District of Iowa agrees.

---

[8] (1) The *Local Competition Order*; and (2) *The Report And Order And Further Notice Of Proposed Rulemaking*,  *In the Matter of Connect America Fund, A National Broadband Plan for our Future,  establishing Just and Reasonable Rates for Local Exchange Carriers, High-Cost Universal Service Support, Developing an Unified Intercarrier Compensation Regime, Federal-State Joint Board on Universal Service, Lifeline and Link-Up, Universal Service Reform - Mobility Fund*, 26 FCC Rcd 17633 (2011), *final rules published*, 76 Fed. Reg. 73830 (Nov. 29, 2011) (subsequent history omitted) ("*Connect America Order*")  Collectively, the *Local Competition Order* and the *Connect America Order* are referred to herein as the "FCC Orders".

Motions to Dismiss similar to those filed in this case have been filed by defendants, like the Rural LEC Defendants, in most, if not all, of the 30 plus similar lawsuits commenced by Sprint across the country.  The Rural LEC Defendants are aware of only one court that has ruled on these motions.  Not surprisingly, there is no mention of that court's decision in the Sprint Response, since that decision rejects Sprint's interpretation of the intraMTA rule.

**A.      The FCC Orders Do Not Support Sprint's Refund Claim.**

The portions of the FCC Orders relied upon by Sprint address the compensation arrangements between LECs and CMRS carriers, not the compensation arrangements between LECs and IXCs, and thus are inapposite to Sprint's refund claim.  On October 6, 2014, the U.S. District Court for the Northern District of Iowa, in the context of a Motion to Dismiss or Stay And Refer Issues To The Federal Communications Commission, rejected Sprint's arguments that the *Local Competition Order* and the *Connect America Order* somehow preclude LECs from billing IXCs for intraMTA calls.  In this connection, the Court ruled:

> First, contrary to Sprint's repeated representations, neither the FCC's 1996 *Local Competition Order* nor its 2011 *Connect America Fund Order* expressly applies to compensation between a LEC and an IXC for intraMTA calls.  As the LECs point out, the 1996 *Local Competition Order* distinguishes between service arrangements between LECs and CMRS providers and service arrangements between LECs and IXCs, and did *not* apply its conclusion that service arrangements involving intraMTA traffic between CMRS providers and LECs are subject to reciprocal compensation, not access charges, to service arrangements involving such traffic between LECs and IXCs.  *See 1996 Local Competition Order*, 11 FCC Rcd 15499, ¶ 1043 (establishing new rules for compensation between LECs and CMRS providers).  Likewise, the 2011 *Connect America Fund Order* only 'clarified' payment arrangements between LECs and CMRS providers, but did not address payment arrangements between LECs and IXCs.  *See* 26 FCC Rcd 17663, ¶ 1007 n. 2132.[9]

---

[9] *Sprint Commc'ns Co. v. Butler-Bremer Mut. Tel. Co.*, No. 14-CV-03028, 2014 U.S. Dist. LEXIS 141758, at *11 (N.D. Iowa Oct. 6, 2014) (Memorandum Opinion and Order Regarding Defendants' Motion to Dismiss or Stay)(emphasis in original) (the "*Sprint/BBMT Opinion and Order*"), attached hereto as **Exhibit 1**.

While the Court did not grant the defendants' motion to dismiss, it also did not deny the motion.  Rather, the Court reserved ruling on the parts of the Motion seeking dismissal of Sprint's claims pursuant to Fed. R. Civ. P. 12(b)(6), and stayed the litigation pending completion of administrative proceedings before the FCC on the issue of the proper compensation arrangement applicable to LECs and IXCs.[10]  The Rural LEC Defendants do not believe that referral to the FCC is necessary.

The *Local Competition Order* made clear that the intraMTA rule does *not* apply to tariffed access arrangements. Paragraph 1043 expressly preserved access arrangements that existed at the time the Telecommunications Act went into effect:

> Based on our authority under section 251(g) [of the Telecommunications Act] to preserve the current interstate access charge regime, we conclude that the new transport and termination rules [*i.e.,* the rules Sprint seeks to apply in this case] should be applied to LECs and CMRS providers so that CMRS providers continue not to pay interstate access charges for traffic that currently is not subject to such charges, *and are assessed such charges for traffic that is currently subject to interstate access charges*.[11]

The Sprint Response to the Rural LEC Defendants' assertions that Paragraph 1043 of the *Local Competition Order* expressly preserved the applicability of access charges to traffic delivered by IXCs, is a kin to the Big Bad Wolf's attempts to blow down the brick house.  Sprint huffs and puffs that the Rural LEC Defendants' contentions regarding the IXC exception to the intraMTA rule recognized in Paragraph 1043 are "without merit, and *ignore every source of law to have addressed the question*[.]" *Sprint Resp.*, at 8 (emphasis added).   In making this careless statement, Sprint ignores the *Sprint/BBMT Opinion and Order* in which the Court specifically cited Paragraph 1043 in concluding that the intraMTA rule *does not* apply to service arrangements involving traffic between LECs and IXCs, even though the Court issued its

---

[10] *Id.* at *15-17.
[11] *Local Competition Order*, at ¶ 1043 (emphasis added).

Opinion and Order just five weeks before the Sprint Response was filed.  Sprint also ignores the fact that the Court in INS (I)[12], a case upon which Sprint relies heavily, explicitly recognized the IXC exception to the intraMTA rule established therein.[13]  The intraMTA rule applies only to the compensation arrangements between LECs and CMRS carriers, and no matter how hard Sprint huffs and puffs, it cannot blow down that brick house.

**B.  The Out Of Jurisdiction *INS* Case Relied Upon By Sprint Does Not Support Sprint's Refund Claim.**

In the *Sprint/BBMT Opinion and Order*, the Court held that the judicial precedent on which Sprint sought to rely is inapposite because the cases at issue "*do not* involve interpretation or policy analysis of FCC regulations regarding payment arrangements between LECs and IXCs."[14]

Sprint relies significantly on the Eighth Circuit's ruling in *Iowa Network Servs., Inc. v. Qwest Corp.*, 466 F.3d 1091, 1096 (8th Cir. 2006) ("INS (II)"), which brought to a conclusion litigation which first started before the Iowa Utility Board ("IUB"), by affirming the decision of the district court in INS (I). The INS (I) and INS (II) Courts found highly persuasive the ruling by the IUB that previously had resolved closely-related disputes between the same parties.[15] Nothing in the *INS* decisions helps Sprint here.

The IUB determination that formed the basis for the Courts' decisions in INS (I) and INS (II), was that an intermediary carrier was not required to pay access charges for CMRS to LEC

---

[12] *Iowa Network Servs., Inc. v. Qwest Corp.*, 385 F. Supp. 2d 850 (S.D. Iowa 2005).
[13] *INS (I)*, at 871 ("[t]he regulatory classification of Qwest is, however, pertinent as there exists within the reciprocal compensation rules an exception for IXCs").
[14] *Sprint/BBMT Opinion and Order,* at *11-12 (emphasis in original).
[15] *In re Exch. of Transit Traffic*, SPU-00-7, Proposed Decision & Order, 2001 WL 36521831, 2001 Iowa PUC LEXIS 548 (Iowa U.B. Nov. 26, 2001) ("IUB Proposed Order"), aff'd, 2002 WL 535299 (Iowa U.B. Mar. 18, 2002) ("IUB Final Order").

intraMTA calls.  From Sprint's perspective this is the end of the story.  However, as is usually the case, there is more to the story.

In *INS*, the calls were: (1) placed by end-user customers of CMRS carriers, (2) delivered by the CMRS carriers to Qwest, (3) delivered by Qwest to INS; (4) delivered by INS to LECs; and (5) switched and delivered by the LECs to their called end-user customers.[16]  In *INS*, the parties had already requested a ruling from the IUB on the proper compensation regime for the particular intraMTA traffic at issue, and the IUB had ordered the parties to negotiate an interconnection agreement to address the compensation arrangements, because INS was entitled to be compensated for the services it was providing.[17]  In *INS*, the IUB made a determination that Qwest was not acting as an IXC.[18]

The *INS* decisions do not apply here. Unlike *INS*, this case involves the tariffed service arrangements used to exchange traffic between an IXC (Sprint) and a LEC (the Rural LEC defendants).   As the *Sprint/BBMT Opinion and Order* correctly concludes, "*INS* involved litigation over compensation between *two intermediary* carriers, INS and Qwest, not between a LEC and an IXC or intermediary carrier."[19]  (emphasis in original).  "INS cannot be read as judicial conclusion that the FCC's regulations *require* reciprocal compensation between LECs and IXCs for the traffic in question."[20]

Furthermore, unlike INS: (1) the Rural LEC Defendants have not been ordered to negotiate an interconnection agreement with Sprint relating to intraMTA traffic; (2) the Rural LEC Defendants have not been paid for services provided via tariff, when a state utility

---

[16] *INS (I)*, at 855.
[17] *Id.,* at 862.
[18] *Id.*, at 893.
[19] *Sprint/BBMT Opinion and Order*, at *12.
[20] *Id.* (emphasis in original).

commission has ordered them to negotiate an interconnection agreement; and (3) the Rural LEC Defendants have not sought to avoid their Telecommunications Act interconnection obligations by "unilaterally" amending their tariffs in response to a regulatory filing by an interconnecting carrier.

The Eight Circuit's decision in *INS (II[21])* does not state what federal law must be; instead, the Eighth Circuit's decision is merely a determination that the IUB's decision regarding the same underlying compensation dispute was "not contrary" to federal law.[22]  As such, there is no basis to extend the IUB's determination outside the specific party relationship between Qwest and INS.  See, *Sprint/BBMT Opinion and Order*, at p.12.

### C. The Other Out Of Jurisdiction Cases Cited In The Sprint Response Do Not Support Sprint's Refund Claim.

Sprint relies on other cases involving intraMTA calls[23], but once again, none involve an IXC's obligation to pay access charges – all involve the billing and contractual relationship between LECs and CMRS carriers as set out in interconnection agreements approved by state commissions. Each of these cases involved a review of a state utility commission decision involving an arbitration of an interconnection agreement between a CMRS carrier and a LEC. As such, these cases only addressed the compensation arrangement between the originating and terminating carriers (i.e. the CMRS carrier and the LEC). None of these cases address the compensation to be charged to (and paid by) an IXC, like Sprint.  Furthermore, none of these cases involved a claim for refunds.  As a result, these cases do not support Sprint's claim that a

---

[21] Sprint also relies on the Eighth Circuit's parallel opinion in *Rural Iowa Indep. Tel. Ass'n v. Iowa Utils. Bd.*, 476 F.3d 572, 576 (8th Cir. 2007) ("RIITA").  This decision involved an appeal of the same IUB Final Order at issue in INS(II).  The Eight Circuit, as it did in INS (II), upheld the determination of the IUB.

[22] *INS (II)*, 466 F.3d at 1097-98 ("Therefore, because there is no prohibition from Congress or the FCC, we hold that the IUB was within its jurisdiction to rule as it did.")

[23] *Atlas Tel. Co. v. Okla. Corp. Comm'n*, 400 F.3d 1256 (10th Cir. 2005); *Alma Comm'ns Co. v. Missouri Pub. Serv. Comm'n*, 490 F.3d 619 (8th Cir. 2007); *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970 (9th Cir. 2012).

LEC cannot bill an IXC switched access rates for the switched access services the IXC has purchased from the LECs filed tariff.

In *3 Rivers*[24], a case cited by Sprint, the Court disregarded the last sentence of Paragraph 1043 of the *Local Competition Order*, which provides in relevant part that "CMRS providers … are assessed [access] charges for traffic that is currently subject to interstate access charges." *3 Rivers*, at *67-68.  The *3 Rivers* Court's rationale for disregarding Paragraph 1043 -- that the paragraph did not use the word "local" and references "interstate" access charges -- is not sound. The concept being addressed in Paragraph 1043 is intraMTA traffic (i.e., CMRS local traffic) and the FCC has jurisdiction over "interstate" access charges.  The *3 Rivers* Court's faulty logic and erroneous conclusions do not save Sprint's refund claim.

## II.   SPRINT HAS NOT REQUESTED AN ALTERNATIVE ARRANGEMENT TO PAYING ACCESS CHARGES.

Telecommunications tariff charges are determined by the type of service requested and purchased from the tariff, not the type of traffic for which a customer uses the service.  Sprint has requested and received Feature Group D long distance trunking service rather than a local interconnection service.  Insofar as an IXC such as Sprint desires to establish an alternative service arrangement with the Rural LEC Defendants for routing intraMTA traffic to and from the Rural LEC Defendants, federal law requires the "requesting carrier"—Sprint in this case—to request negotiation of an agreement for such a new service arrangement under Sections 251 and 252 of the Telecommunications Act.[25]  Sprint does not, and cannot, allege that it has made such a request.  By delivering traffic to the Rural LEC Defendants in the absence of a request for interconnection in accordance with 47 C.F.R. § 20.11 or request for a reciprocal

---

[24] *3 Rivers Tel. Coop., Inc. v. U.S. W. Commc'ns, Inc.*, No. CV 99-80-GF-CSO, 2003 WL 24249671, (D. Mont. Aug. 22, 2003).
[25] *See,* 47 U.S.C. §§ 251(c)(1) and 252(a)(1).

compensation arrangement pursuant to 47 U.S.C. § 251(b)(5), Sprint is bound by the terms of the Rural LEC Defendants' otherwise applicable tariffs.[26]

## III.   SPRINT'S CLAIMS ARE BARRED BY THE VOLUNTARY PAYMENT DOCTRINE.

The Sprint Response unsuccessfully attempts to justify why Sprint's failure to dispute the Rural LEC Defendants' switched access bills, and Sprint's voluntary payment of the bills with full knowledge of the FCC Orders and case law upon which Sprint now relies, does not foreclose Sprint's request for a refund.  *Sprint Resp.*, at 13-16.

Sprint's assertion that "in Wisconsin the voluntary payment doctrine does not apply where a statute provides an aggrieved party the right to file suit to challenge improper billing practices" (*Sprint Resp.*, at 14), is a gross overstatement of the law.  In support of this assertion, Sprint relies upon *MBS-Certified Public Accountants, LLC v. Wisconsin Bell, Inc.*, 2012 WI 15, 338 Wis. 2d 647, 809 N.W.2d 857 (Wis. 2012).  In *Wis. Bell, Inc.*, the Wisconsin Supreme Court held that the voluntary payment doctrine was inapplicable to a claim under Wis. Stats. § 100.207 because the application of the doctrine would undermine the manifest purpose of that statute – to prohibit cramming.  *Id., ¶¶ 56, 74.*  The allegations at issue in *Wis. Bell, Inc.* related to an illegal telecommunications practice called "cramming."  *Id.*, at ¶ 6.  "Cramming" is a deceptive billing scheme in which telecommunications companies insert unauthorized charges into customer telephone bills with the expectation that the customer will unwittingly pay them.  In *Wis. Bell, Inc.,* Plaintiff brought causes of action against the defendant telephone company under a variety of statutes including Wis. Stats. § 100.207.  Section 100.207(3) specifically prohibits cramming – "A person may not bill a customer for telecommunications service that the customer did not

---

[26] *See, T-Mobile's Petition for Declaratory Ruling Regarding ILEC Wireless Termination Tariffs*, 20 FCC Rcd. 4855 (2005), Declaratory Ruling and Report and Order, rel. Feb. 24, 2005, ¶ 12 ("By routing traffic to LECs in the absence of a request to establish reciprocal mutual compensation, CMRS providers accept the terms of otherwise applicable state tariffs.").

affirmatively order… ."    The Court concluded that applicability of the voluntary payment doctrine would undermine the legislative purpose to deter cramming.  *Id.* at ¶ 56.

What Sprint fails to share with this Court is the Wisconsin Supreme Court's further conclusions regarding the voluntary payment doctrine and the applicability of the *Wis. Bell, Inc.* decision to statutes other than Wis. Stats. § 100.207.  Specifically, the Wisconsin Supreme Court stated "[w]e emphasize that the voluntary payment doctrine remains *alive and well* in Wisconsin.  The determination of whether the doctrine bars a cause of action is a *statute specific inquiry*."  Id. at ¶ 77 (emphasis added).   This pronouncement by the Wisconsin Supreme Court is a far cry from Sprint's interpretation of the law.

Section 100.207(3) of the Wisconsin statutes specifically prohibits "cramming," the very claim that the Plaintiff in *Wis. Bell, Inc.* sought to pursue.  Here, the statutory provisions of the Telecommunications Act upon which Sprint bases Counts I and II of its Complaint – i.e., §§ 201(b), 203, 206 and 207, do not even address the intraMTA rule, much less specifically prohibit LECs from billing IXCs access charges for intraMTA traffic.  As such, contrary to Sprint's contention, the *Wis. Bell, Inc.* decision does not prohibit applicability of the voluntary payment doctrine to bar Sprint's claim.

Likewise, the filed rate doctrine does not prevent dismissal under the voluntary payment doctrine.  In the Sprint Response, Sprint takes a 180 degree turn and attempts to rely upon the filed rate doctrine (which Sprint previously claimed had no applicability to this case) to avoid the consequences of its own actions and failure to act under the voluntary payment doctrine.  *Sprint Resp*. at 15.  Sprint asserts that the filed rate doctrine "acts as an absolute bar to the Defendants' ability to recover payments not covered by their tariffs."   Sprint's reliance on the filed rate doctrine is nonsensical.  The Rural LEC Defendants are not trying to "recover payments" from

Sprint; Sprint is the party seeking to "recover payments" made to the Rural LEC Defendants for access services it purchased from the Rural LEC Defendants.

Sprint points to a Pennsylvania district court case[27] in purported support of its arguments that the filed rate doctrine prohibits application of the voluntary payment doctrine, alleging that the PAETEC case addressed the "exact issue" that is now before this Court. *Sprint Resp.,* at 15. The *PAETEC* decision does not address the "exact issue" now before this Court.

In *PAETEC*, the plaintiff telephone company (PAETEC) sued the defendant IXC (MCI/Verizon), alleging the defendant had failed to pay for telecommunications charges under the plaintiff's federal and state tariffs and sought a declaratory judgment that it could continue to assess certain switched access charges. The defendant counterclaimed that the charges were excessive of those permitted by federal law and the applicable tariffs, and both sides moved for summary judgment.[28]

PAETEC claimed that MCI/Verizon's refund claims were barred by the voluntary payment doctrine. The court pointed to a Virginia district court decision involving PAETEC, holding that the filed rate doctrine bars equitable relief "in this context."[29] The court then explained the context – "[t]he filed rate doctrine prohibits a carrier from collecting charges for services that are not described in its tariff."[30]  The court observed, "PAETEC admits that it calculated the rate for SWAS-DC to be the combined dollar amounts of the ILEC local switching and tandem switching elements, and this is not permissible under the filed rate doctrine."[31]

The Court in PAETEC held that the voluntary payment doctrine did not apply because PAETEC charged a rate in excess of the one defined in its tariff. In the instant case, the Rural

---

[27] *PAETEC Commc'ns, Inc. v. MCI Commc'ns Services, Inc.*, 712 F. Supp. 2d 405 (E.D. Pa. 2010)
[28] *Id.*, at 407-08.
[29] *Id.*, at 417.
[30] *Id.*
[31] *Id.*

LEC Defendants are providing Sprint the access services described in their intrastate and interstate access tariffs and charging the approved tariff rates for those services. Sprint paid the tariffed rate for exchange access service – a service which Sprint received and paid for years without dispute. Thus, PAETEC is not on point and does not salvage Sprint's refund claims.

Finally, Sprint does not deny that the voluntary payment doctrine is a proper basis for dismissal under Rule 12(b)(6) where its applicability is apparent from the Complaint.  Sprint's comment in a footnote that there may be questions of fact surrounding the voluntary payment doctrine defense because of the knowledge component of the defense (*Sprint Resp.* at 16) is a red herring.  Nowhere has Sprint claimed it lacked any knowledge that it was being billed access charges by the Rural LEC Defendants for all traffic, including intraMTA traffic.   In the Defendant Memorandum, the Rural LEC Defendants had the following to say about Sprint's knowledge:

> Sprint paid the Rural LEC Defendants' bills for switched access service without protest or objection.  *Complaint* at ¶ 1.  Sprint paid the Rural LEC Defendants' bills for switched access service with full knowledge of the *Local Competition Order* (1996), and later with full knowledge of the *Connect America Order* (2011) without protest or objection. *Complaint* at ¶¶ 1, 50, 52.  Sprint paid the Rural LEC Defendants' bills for switched access service with full knowledge of the Rural LEC Defendants' interstate and intrastate access tariffs without protest or objection. *Complaint* at ¶¶ 1, 3, 4, 69, 74.

Defendant Memorandum at 17-18.  The Sprint Response makes no claim to the contrary.

Where a Complaint demonstrates that the plaintiff voluntarily paid the charges for which it seeks a refund with full knowledge of the laws and facts for many years without protest or reservation of rights the Complaint should be dismissed.  In this case, Sprint's own Complaint demonstrates that it voluntarily paid the charges for which it seeks a refund in this action.  Sprint Communications has voluntarily (and without dispute) paid for and received access to the Rural LEC Defendants' networks by requesting, receiving, and paying for Feature Group D exchange

14

access service pursuant to the Rural LEC Defendants' intrastate and interstate access tariffs. Accordingly, Sprint's claims for refund are barred by the voluntary payment doctrine and must be dismissed.

## IV.   NONE OF THE AUTHORITY CITED BY SPRINT SUPPORTS A CLAIM FOR A REFUND.

Sprint has cited no case law supporting a refund of access charges billed and paid with respect to intraMTA traffic even though Sprint claims that the law has been clear since 1996. Not a single case, cited by Sprint required a LEC to refund access charges to an IXC for intraMTA calls.  Moreover, the relief Sprint seeks here—refunds for previously paid access charges—was specifically considered and rejected by the IUB. *IUB Final Order*, at 14-18.  The absence of any precedent to support Sprint's refund claim is significant.

Sprint contends that Section 207 of the Telecommunications Act, permits Sprint to seek retroactive relief in the form of "damages" even though the Rural LEC Defendants' tariffs have never been challenged in a Section 205 proceeding and have never been invalidated, amended, or declared unjust and unreasonable by the FCC or a state commission. *Sprint Resp.*, at 13.  Section 207, however, applies only when a carrier has violated a provision of the Telecommunications Act, for example by engaging in a practice that the FCC has already determined to be unjust and unreasonable; it is not a mechanism for an aggrieved party to ask a federal court to find a tariff's provisions unjust and unreasonable in the first instance. Only the FCC has the authority to declare a tariff unjust or unreasonable, and even the FCC can do so only after it holds a hearing under 47 U.S.C. § 205 with proper notice.[32] Only after the FCC has made that determination can an aggrieved party seek relief before the FCC or a federal court. 47 U.S.C. § 207.

---

[32] *See, Global Crossing Telecommunications, Inc. v. Metrophones Telecommunications, Inc.*, 550 U.S. 45, 49 (2007).

## CONCLUSION

For all the foregoing reasons, as well as those set forth in the Defendant Memorandum, Counts I through IV and X of the Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated this 24th day of November, 2014.

AXLEY BRYNELSON, LLP

/s/ *Judd A. Genda*
Michael J. Modl
Judd A. Genda
2 E. Mifflin Street, Suite 200
Madison, WI 53703
Telephone: (608) 257-5661
Facsimile: (608) 257-5444
E-mail: jgenda@axley.com

Attorneys for the Rural LEC Defendants